UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEYBANC CAPITAL MARKETS, INC., | 23-cv-8535 (JSR) |
| Plaintiff, | |
| -v- | OPINION |
| EXTREME STEEL, INC., EXTREME CRAIN & RIGGING, INC., AND EXTREME RENTAL USA, LLC, | |
| Defendants. | |

JED S. RAKOFF, U.S.D.J.:

This is a straightforward action for breach of contract by an investment bank against its former client. Plaintiff Keybanc Capital Markets, Inc. ("KBCM") alleges that it entered into an agreement (the "Engagement Letter") to act as financial advisor to defendants in connection with the sale of some portion of their business, and that after such a sale concluded defendants refused to pay plaintiff the amounts owed under the agreement. The complaint asserts claims for breach of contract, *quantum meruit*, and unjust enrichment.

Defendants have filed a motion to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants principally argue that the Engagement Letter was too indefinite to constitute a binding agreement, and so any claim for breach of it fails both as a matter of substance and pursuant to New

York's statute of frauds.[1] Because the writing was purportedly inadequate, defendants further argue that plaintiff's quasi-contract claims also are barred by the statute of frauds.

On January 3, 2024, after full briefing, the Court heard oral argument on defendants' motion. At the close of oral argument, the Court denied the motion from the bench, with a written decision to follow. This Opinion sets forth the reasons for that ruling.

## I.  **<u>Factual Allegations</u>**

Plaintiff's complaint and the Engagement Letter annexed thereto set forth the following allegations:

Defendant Extreme Steel, Inc. ("Extreme Steel") is a steel design, engineering, fabrication and installation company. Compl. ¶ 3. Defendant Extreme Crane & Rigging, Inc. ("Extreme Crane") is a provider of crane, rigging and heavy hauling services. *Id.* ¶ 4. Defendant Extreme Rental USA ("Extreme Rental") is a provider of construction equipment rental services. *Id.* ¶ 5.

On October 5, 2021, these three defendants and KBCM signed the Engagement Letter, appointing KBCM as the "sole and exclusive financial advisor to the Company in connection with a possible Transaction." *Id.* ¶ 22 (quoting Engagement Ltr. at 1). The Engagement Letter defines "Company" to collectively include the three defendants and their

---

[1]     The Engagement Letter specifies that New York law applies to any disputes arising under the agreement. *See* Engagement Ltr. App. A ¶ 12. Further, the parties both assume New York law applies, and so the Court will do the same.

subsidiaries, and defines "Transaction" to encompass a sale of any material portion of the business. Engagement Ltr. at 1.[2]

The Engagement Letter describes the services KBCM will provide as follows: "During the term of its engagement, KBCM will provide such financial advice and assistance in connection with the Transaction as the Company may reasonably request, which may include searching for potential counterparties, advising and assisting the Company in evaluating the various structures and forms of any Transaction, assisting the Company in the evaluation of offers and in negotiating the financial aspects of the Transaction." Engagement Ltr. at 1-2.

Pursuant to the Engagement Letter, KBCM is entitled to a "Transaction Fee" "payable in full promptly upon consummation of a Transaction, of $1.5 million; plus 5.0% of any Transaction Value (as defined below) in excess of $67.5 million." Compl. ¶ 25 (quoting Engagement Ltr. at 2). The Engagement Letter also entitles KBCM to reimbursement of "all reasonable out-of-pocket expenses incurred in connection with the performance of its services under this letter agreement." Compl. ¶ 26 (quoting Engagement Ltr., at 3). Finally, the Engagement Letter provides that, "if the Transaction Fee is not paid

---

[2] Specifically, 'Transaction' means, "whether in one of or a series of related transactions, the sale, transfer or other disposition, directly or indirectly, of all or a material portion of the business assets, divisions, or securities of the Company, whether by way of merger or consolidation, reorganization, recapitalization or restructuring, tender or exchange offer, negotiated purchase, leveraged buyout, lease or license, investment or partnership, joint venture, spin-off, split-off or otherwise." *Id.*

in full within five business days following consummation of any Transaction then the Company agrees that it will be responsible for all fees and expenses incurred by KBCM (including reasonable fees and disbursements of KBCM's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce the Company's obligation to pay KBCM the Transaction Fee and/or to reimburse KBCM for expenses as provided by this letter agreement." Compl. ¶ 38 (quoting Engagement Ltr. at 3).[3]

In July 2022 Extreme Rental was sold for approximately $8,000,000 and in October 2022 Extreme Crain was sold for approximately $32,500,000. Compl. ¶¶ 29-30. As alleged in the complaint, KBCM "fully performed its contractual obligations" in connection with these sales by "providing extensive financial advice and assistance to the Company including, but not limited to, developing and creating marketing materials and financial models, identifying and communicating with potential purchasers and investors, facilitating purchaser due diligence, creating and managing an online data room, advising and assisting the Extreme Group in evaluating various structures and forms of potential transactions, and leading and facilitating negotiations

---

[3]     The Engagement Letter also contains two appendices the contents of which are largely not implicated by this motion. *See* Engagement Ltr. App. A-B. One appendix is titled "Standard Terms and Conditions," and contains more generic contract terms, and the other is titled "Indemnification Provision," and requires defendants to indemnify KBCM in a variety of circumstances. *Id.*

and transaction structure discussions, resulting in the sale of Defendants Extreme Rental and Extreme Crane & Rigging." Compl. ¶ 28.

In August 2023 KBCM sent an invoice to defendants, requesting $1,504,897 that KBCM was purportedly owed pursuant to the Engagement Letter. Compl. ¶ 34. Defendants refused to pay and KBCM brought this action, asserting claims for breach of contract and, in the alternative, *quantum meruit* and unjust enrichment. *See* Compl. ¶¶ 40-60. KBCM seeks to recover the $1,504,897 allegedly owed under the agreement, plus pre- and post-judgment interest, and reasonable attorneys fees. *See* Compl. ¶¶ 45, 52, 60.

## II.  Discussion

### A. Breach of Contract

Defendants argue KBCM's breach of contract claim should be dismissed because the Engagement Letter lacks the definiteness necessary to be an enforceable agreement, principally because it (supposedly) does not impose any obligations on KBCM. In their reply, defendants attempt to morph this into a somewhat different argument -- that there was a lack of consideration on KBCM's part. Regardless of how the argument is framed, it plainly fails.

For a contract to be enforceable, it "must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). This requirement of definiteness "assures that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement," *Kolchins v. Evolution Markets, Inc.*,

96 N.E.3d 784, 788 (N.Y. 2018), and assures that courts are able to "know whether the contract has been breached" and "fashion a proper remedy," *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989).

The doctrine of definiteness should "be sparingly used, as a 'last resort,' and only when an agreement 'cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear.'" *Cowen & Co., LLC v. Fiserv, Inc.*, 31 N.Y.S.3d 494, 496 (N.Y. App. Div. 2016) (quoting *Cobble Hill Nursing Home*, 74 N.Y.2d at 483). "[W]here it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain." *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E.2d 104, 106 (N.Y. 1991).

Based upon the allegations in the complaint, there is little doubt that the parties intended the Engagement Letter to be an enforceable agreement. The letter was signed by plaintiff and all three defendants to this action. Engagement Ltr. at 4. Indeed, defendants went so far as to include each of their taxpayer identification numbers below their respective signatures. *Id.* Right above the signature block, the Engagement Letter states: "If this letter agreement accurately sets forth the understanding between us, please sign the enclosed copy of this letter agreement below and return it to KBCM, at which time this letter agreement will become **a mutually binding obligation**." *Id.* (emphasis added).

Notwithstanding this clear intent to be bound, defendants argue the agreement is not sufficiently definite because it does not adequately define KBCM's obligations. To the extent defendants argue KBCM has no obligations at all under the agreement, and hence consideration is lacking, that argument plainly fails. The Engagement Letter specifies that KBCM "**will provide** such financial advice and assistance in connection with the Transaction as [defendants] may reasonably request," and then goes on to list specific examples of such services. Engagement Ltr. at 1-2 (emphasis added). By its terms, this language is not optional, but rather requires KBCM to satisfy all reasonable requests for financial advice it may receive from defendants for the duration of the contract. Indeed, the Engagement Letter explicitly states that the transaction fee payable under the agreement is "consideration for KBCM's services." *Id.* at 2. Defendants are thus incorrect that the Engagement Letter "does not require KeyBanc to do **anything**." MTD at 5 (emphasis in original).

That defendants are not required to request such services from KBCM does nothing to undermine consideration. Consideration may be premised upon a conditional promised contingent upon a future event that may or may not occur (i.e. a request for assistance by defendants), and the eventual non-occurrence of any such condition does not undermine consideration. *See* Restatement (Second) of Contracts § 76 cmt. c and illustrations 4 and 6; 3 Williston on Contracts § 7:19 (4th ed. 2023).

Defendants' motion also appears to argue that the agreement fails to adequately define what financial advisory services KBCM is obligated to provide. To the extent this is defendants' argument, it also fails. The term "financial advisor" has a well-understood meaning in this context, and so, particularly when combined with the parties' subsequent course of dealing, that phrase alone would likely be sufficiently clear to render the contract definite. *See Cap. Dist. Enterprises, LLC v. Windsor Dev. of Albany, Inc.*, 861 N.Y.S.2d 816, 819 (N.Y. App. Div. 2008) (noting that a contract term "may be sufficiently definite if it can be objectively determined by reference to commercial practice or trade usage, or by subsequent conduct of the parties"). However, the Engagement Letter goes beyond simply using the term "financial advisor" by actually specifying examples of the services KBCM is agreeing to provide, including "searching for potential counterparties, advising and assisting the Company in evaluating the various structures and forms of any Transaction, assisting the Company in the evaluation of offers and in negotiating the financial aspects of the Transaction." Engagement Ltr. at 1-2. While the Engagement Letter did not enumerate every single specific service that may have been contemplated, that fact in no way renders the agreement indefinite or unenforceable. "[A]t some point virtually every agreement can be said to have a degree of indefiniteness, but parties should be held to their promises." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007). The

Court therefore finds that, based upon the allegations in the complaint, the Engagement Letter is an enforceable agreement.[4]

B. Quasi-Contract

In the alternative, plaintiff alleges claims for unjust enrichment and *quantum meruit*. To state a claim for *quantum meruit* a plaintiff must allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*, 2019 WL 6498397, at *4 (S.D.N.Y. Dec. 3, 2019) (quotation omitted). To state a claim for unjust enrichment, a plaintiff must allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Defendants argue these quasi-contract claims should be dismissed for three reasons. As explained below, none has merit.

*First,* defendants argue that, insofar as plaintiff's breach of contract claim fails due to the lack of an enforceable contract, plaintiffs quasi-contract claims are barred by the statute of frauds because there is no writing evincing the terms of the agreement. MTD at 7-9. As explained above, the Court finds that -- for purposes of

---

[4]     Because the Court finds the agreement is sufficiently definite, and lays out all essential terms, it also rejects defendants argument that plaintiff's claim fails under the statute of frauds.

this motion to dismiss -- the Engagement Letter is a valid an enforceable agreement. But even setting that aside, defendants' argument fails because the standard for a writing to satisfy the statute of frauds is far less exacting than the standard for a contract to be enforceable. *See, e.g.*, *Chapman, Spira & Carson, LLC v. Helix BioPharma Corp.*, 982 N.Y.S.2d 93, 95 (N.Y. App. Div. 2014) (holding email was sufficient to satisfy statute of frauds and support a quantum meruit claim, even where it was not enforceable as a contract, because it "evidenced the fact of plaintiff's employment [by defendant] to render the alleged services"); *Zhi Zhong Qiu v. Diamond*, 2020 WL 978352, at *4 (S.D.N.Y. Feb. 27, 2020) (finding email satisfied statute of frauds where it stated, "Atlas will pay $3.5 million for your services upon completion and in accordance with all applicable rules" and rejecting argument that the term "services" was not sufficiently clear). Thus, even if (contrary to fact) the Engagement Letter were hypothetically unenforceable as a binding agreement, the Engagement Letter would nevertheless serve as a writing sufficient to satisfy the statute of frauds.

*Second*, defendants argue that plaintiff's factual allegations are insufficient to support a claim for quantum meruit or unjust enrichment because the complaint does not adequately allege that defendants derived any benefit from KBCM's efforts. The complaint offers the following allegation regarding the work KBCM performed pursuant to the engagement agreement:

During the term of the Agreement, KBCM provided extensive financial advisory services to the Extreme Group including, but not limited to, developing and creating marketing materials and financial models, identifying and communicating with potential purchasers and investors, facilitating purchaser due diligence, creating and managing an online data room, advising and assisting the Extreme Group in evaluating various structures and forms of potential transactions, and leading and facilitating negotiations and transaction structure discussions, resulting in the sale of Defendants Extreme Rental and Extreme Crane & Rigging during the term of the Agreement for over $40 million.

Compl. ¶ 8. In further support of its *quantum meruit* claim, the

complaint alleges as follows:

47. As set forth in detail above, KBCM provided substantial work, effort and resources to and on behalf of Defendants and Defendants received a direct, tangible and substantial benefit as a direct result of KBCM's work and efforts and at KBCM's direct expense.

48. Plaintiff KBCM provided its professional services to the Defendants in good faith and with the expectation that it would be compensated for its work and efforts.

49. Defendants knowingly and willingly accepted KBCM's professional services with full knowledge and the expectation that they would be required to compensate KBCM for its professional services.

50. The reasonable value of KBCM's professional services to Extreme Group is at least $1,504,897 (One Million Five Hundred Four Thousand Eight Hundred Ninety-Seven Dollars).

51. Despite due demand, Defendants have failed to compensate KBCM for the reasonable value of KBCM's professional services, which sum is rightfully due and owing to KBCM.

Compl. ¶¶ 47-51. And in support of its unjust enrichment claim,

the complaint offers the following allegations:

54. As set forth in detail above, KBCM provided substantial work, effort and resources to and on behalf of Defendants

11

and Defendants were substantially enriched as a direct
result of KBCM's work and efforts and at KBCM's direct
expense.

55. Plaintiff KBCM provided its professional services to the
Defendants in good faith and with the expectation that it
would be compensated for its work and efforts.

56. Defendants knowingly and willingly accepted KBCM's
professional services with full knowledge and the
expectation that they would be required to compensate KBCM
for its professional services.

57. Despite due demand, Defendants have failed to compensate
KBCM for all sums which are rightfully due and owing to
KBCM.

58. Equity and good conscience require Defendants to
compensate KBCM for all sums which are rightfully due and
owing to KBCM.

59. Likewise, Defendants should not be permitted to receive
a windfall in the form of uncompensated professional
services from KBCM.

Compl. ¶¶ 54-59. These allegations are more than sufficient to

state claims for both *quantum meruit* and unjust enrichment. Not only

do they lay out all the essential elements of the respective claims,

they also provide defendants with adequate notice of the factual and

legal bases underlying them.

Defendants argue that the complaint fails to "connect[]" the

services provided to the ultimate sale of the two businesses, Reply

at 7, but it is not clear what defendants mean by this. The complaint

alleges that the work performed "resulted in the sale" of Extreme

Crane and Extreme Rental, and provided value to defendant in excess

of $1,504,897. *See* Compl. ¶¶ 8, 50. Given the other allegations in the

complaint, that is more than sufficient to establish a causal connection between plaintiff's work and the sales.[5]

*Finally*, defendants argue that these quasi-contract claims should be dismissed insofar as a valid contract exists. Defendants are correct that the existence of a valid contract displaces any quasi-contract claims regarding the same subject matter. However, the fact that, as the Court has determined *supra*, the complaint alleges a valid breach of contract claim based on the Engagement Letter does not warrant dismissal of plaintiff's quasi-contract claims at this stage, because the adequacy of the breach of contract claim was based on the allegations of the complaint, which defendants may well factually contest as the case goes forward.

Federal Rule of Civil Procedure 8 expressly authorizes pleadings in the alternative. *See* Fed. R. Civ. P. 8(a)(3), (d)(2). For this reason, "courts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where 'the validity and scope of the contract is difficult to determine,' 'where the parties dispute[ ] the existence of a contract,' or where the claims arise out of 'agreements or understandings of the parties that were not expressly written in

---

[5] Defendants vaguely suggest that KBCM in fact had no role in these sales. *See* Reply at 7 ("In its opposition, KeyBanc does not even attempt to clarify that its work involved [the two buyers] (because it did not)."). Such a contention, going well beyond the allegations of the complaint, is not appropriate for resolution on a motion to dismiss.

the contract.'" *Silverman v. Payward, Inc.*, 2019 WL 3242347, at *2 (S.D.N.Y. June 24, 2019) (quoting *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017)).

Here, defendants have already disputed the validity of the contract in question not just as a legal matter (which the Court has resolved against them) but also as a factual matter (which they are free to continue to pursue). Defendants may well raise other challenges to the agreement's enforceability as the case progresses. The Court therefore finds that plaintiff should be allowed to proceed with these alternative claims, at least at this stage of the case.

C. Attorney's Fees

By its terms, the Engagement Letter entitles KBCM to recover its attorney's fees in connection with any effort to collect amounts owed under the agreement.[6] In their opening brief, defendants appear to argue that this provision is unenforceable because "[p]rovisions allowing one party to recover attorneys' fees should they prevail in litigation without a reciprocal allowance are deemed fundamentally unfair and unreasonable." MTD at 11. Defendants largely abandon this argument in their reply brief, instead focusing solely on the argument

---

[6]    *See* Engagement Ltr. at 3 ("If the Transaction Fee is not paid in full within five business days following consummation of any Transaction then the Company agrees that it will be responsible for all fees and expenses incurred by KBCM (including reasonable fees and disbursements of KBCM's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce the Company's obligation to pay KBCM the Transaction Fee . . . .").

that Engagement Letter is not an enforceable agreement. *See* Reply at 4. As explained above, plaintiff has adequately pled the Engagement Letter is enforceable, and so the latter argument clearly fails. But to the extent defendants continue to press the former argument, it is plainly wrong.

There is no general rule against one-way attorney's fees provisions. Rather, "a contract provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable 'so long as those amounts are not unreasonable.'" *Weiwei Gao v. Sidhu*, 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir.1987)). Here, the attorney's fee provision was negotiated by large and sophisticated parties on both sides and was added to an agreement requiring the payment of at least $1.5 million. Such a circumstance is far afield from the sole case cited by defendants, which concerned a non-reciprocal allowance for attorney's fees in an attorney's retainer agreement with his client. *See Ween v. Dow*, 822 N.Y.S.2d 257, 261-62 (N.Y. App. Div. 2006) ("[W]ith regard to attorney fee arrangements, the courts, as a matter of public policy, give particular scrutiny to the reasonableness of the fee arrangements between attorneys and clients . . . ."). Under the circumstances presented here, the non-reciprocal attorney's fee provision is not inherently unconscionable.

For the forgoing reasons, the Court at the hearing on January 3, 2024, denied in its entirety defendant's motion to dismiss.

New York, NY
January 5, 2024

JED S. RAKOFF, U.S.D.J.