**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————x

**KEYBANC CAPITAL MARKETS INC.,**                    C.A. No. 1:23-cv-08535 (JSR) (KAP)

                      **Plaintiff,**

    **- against –**


**EXTREME STEEL, INC., EXTREME CRANE**
**& RIGGING, INC., AND EXTREME RENTAL**
**USA, LLC,**

                    **Defendants.**

————————————————————x


### PLAINTIFF KEYBANC CAPITAL MARKET INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, COSTS AND <u>EXPENSES, AND PRE- AND POST- JUDGMENT INTEREST</u>


**MORAN • KARAMOUZIS LLP**
**Andrew P. Karamouzis, Esq.**
**265 Sunrise Highway, Suite 61**
**Rockville Centre, New York 11570**
**(516) 678-6660**
akaramouzis@mka-law.com

**Attorneys for Plaintiff**
**KeyBanc Capital Markets Inc.**

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITITES**...................................................................   i

**PRELIMINARY STATEMENT**.............................................................   1

**FACTUAL AND PROCEDURAL HISTORY**...............................................   4

**ARGUMENT**.......................................................................   6

**KEYBANC IS ENTITLED TO AN AWARD OF COSTS AND
EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES,
AND PRE- AND POST-JUDGMENT INTEREST**......................................   6

**Point I**............................................................................   6

   **THE LEGAL STANDARDS GOVERNING AN
AWARD OF ATTORNEY'S FEES**...............................................   6

**Point II**...........................................................................   8

   **KEYBANC'S ATTORNEY'S FEES ARE REASONABLE**.......................   8

**Point III**.........................................................................   12

   **KEYBANC'S COSTS AND EXPENSES ARE REASONABLE**.................   12

**Point IV**..........................................................................   13

   **KEYBANC IS ENTITLED TO PRE- AND
POST-JUDGMENT INTEREST ON THE JUDGMENT**........................   13

    **A. Pre-Judgment Interest**..............................................   13

    **B. Post-Judgment Interest**............................................   16

**CONCLUSION**.....................................................................   16

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                                   **<u>PAGE(S)</u>**

*Arizona Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co.*,
   586 F. App'x 713 (2d Cir. 2014) ............................................ 14

*Asesoral Business Partners, LLC v. Seatech Worldwide Corp., No. 19-CV-11512*
   (AJN) (SLC), 2021 U.S. Dist. LEXIS 241612, 2021 WL 6755016 (S.D.N.Y. Dec. 16, 2021)
   .................................................................................... 15

*Asesoral Business Partners, LLC v. Seatech Worldwide Corp., No. 19-CV-11512*
   2022 U.S. Dist. LEXIS 77569, 2022 WL 1265945 (Apr. 28, 2022) ..................................... 15

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
   212 F. Supp. 2d 226 (S.D.N.Y. 2002) ..................................................... 9

*Bleecker v. Zetian Sys., Inc., No, 12 Civ. 2151*
   (DLC), 2013 U.S. Dist. LEXIS 157103, 2013 WL 5951162 (S.D.N.Y. Nov. 1, 2013) ......... 16

*Bolivar v. FIT Int'l Grp. Corp., No. 12-CV-781*
   (PGG) (DF), 2017 U.S. Dist. LEXIS 39887, 2017 WL 11473766 (S.D.N.Y. Mar. 16, 2017)
   ....................................................................................15

*Bolivar v. FIT Int'l Grp. Corp., No. 12-CV-781*
   2019 U.S. Dist. LEXIS 161718, 2019 WL 4565067 (Sept. 20, 2019) ................................... 15

*Clarendon Nat'l Ins. Co. v. Advance Underwriting Managers Agency, Inc., No. 06 Civ. 15361*,
   2011 U.S. Dist. LEXIS 142946, 2011 WL 6153691 (S.D.N.Y. Dec. 8, 2011) ...................... 7

*Duke v. Cnty. of Nassau, No. 97-CV-1495*,
   2003 U.S. Dist. LEXIS 26536, 2003 WL 23315463 (E.D.N.Y. Apr. 14, 2003) ................... 12

*Entron, Inc. v. Affiliated FM Ins. Co.*,
   749 F.2d 127 (2d Cir. 1984) .......................................................................14

*Four H Fashions, Ltd. v. Russell Newman Brands, LLC, No. 11 Civ. 4669*
   (LTS), 2011 U.S. Dist. LEXIS 141011, 2011 WL 6091548 (S.D.N.Y. Dec. 6, 2011) ......... 14

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998) .......................................................................14

*Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*,
   752 F. App'x 90 (2d Cir. 2019) ............................................................... 13

*Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*,
   314 F. Supp. 3d 534 (S.D.N.Y. 2018) ................................................... 13

*Jefferies LLC v. Gegenheimer, S.D.N.Y.* ,
   2021 U.S. Dist. LEXIS 160911 (Aug. 25, 2021) .................................................... 7

i

**CASES**                                                                 **PAGE(S)**

*McCoy v. Goldberg,*
   810 F. Supp. 539 (S.D.N.Y. 1993) ....................................................... 14

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund,*
   450 F.3d 91 (2d Cir. 2006) ................................................................ 9

*McGuire v. Russell Miller, Inc.,*
   1 F.3d 1306, 1313 (2d Cir. 1993)..........................................................7

*Midwood Junction v. Puerto del Sol Int'l Inv., S.A., No. 15-CV-5181*
   (RA) (SN), 2016 U.S. Dist. LEXIS 168654, 2016 WL 8905357 (S.D.N.Y. Dec. 5, 2016) ... 14

*Midwood Junction v. Puerto del Sol Int'l Inv., S.A., No. 15-CV-5181*
   2017 U.S. Dist. LEXIS 68936, 2017 WL 1857248 (May 4, 2017) ....................... 14

*Motorola, Inc. v. Abeckaser, No. 07-cv-3963,*
   2009 U.S. Dist. LEXIS 87803, 2009 WL 2568529 (E.D.N.Y. Aug. 5, 2009) ..................... 12

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,*
   537 F.3d 168 (2d Cir. 2008) .............................................................. 7

*Paddington Partners v. Bouchard,*
   34 F.3d 1132 (2d Cir. 1994) ............................................................. 14

*Paguirigan v. Prompt Nursing Empl. Agency LLC:17-cv-01302,*
   2022 U.S. Dist. LEXIS 186823, 2022 WL 6564755 (E.D.N.Y. Apr. 7, 2022) ..................... 9

*Palco Telecom Serv., Inc. v. Global Warranty Grp., LLC, 14 Civ. 4818*
   (ADS) (SIL), 2015 U.S. Dist. LEXIS 158879, 2015 WL 10793120 (Aug. 17, 2015) .......... 14

*Patel v. Bandikatla,*
   2024 U.S. Dist. LEXIS 63548 ** 31 - 34 (S.D.N.Y. April 5, 2024) .......................10

*Pino v. Locascio,*
   101 F.3d 235 (2d Cir. 1996) ..............................................................11

*Schwartz v. Liberty Mut. Ins. Co.,*
   539 F.3d 135 (2d Cir. 2008) .............................................................. 14

*Sulkowska v. City of New York,*
   170 F. Supp. 2d 359 (S.D.N.Y. 2001) .................................................... 12

*Tessemae's LLC v. Atlantis Cap. LLC, No. 18-CV-4902*
   (KHP), 2019 U.S. Dist. LEXIS 108020 (S.D.N.Y. June 27, 2019) ........................ 9

*Themis Capital v. Democratic Republic of Congo, No. 09-cv-1652,*
   2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ........................................... 12

**CASES**                                                    **PAGE(S)**

*Tulino v. City of New York, 15-CV-7106,*
    2019 U.S. Dist. LEXIS 137523 (S.D.N.Y. August 1, 2019) ................................................. 11

*U.S. Fidelity & Guar. Co. v. Baspetro Oil Servs. Co.,*
    369 F.3d 34 (2d Cir. 2004)........................................................................................................... 7

*Vista Outdoor Inc. v. Reeves Fam. Tr., No. 16 CIV. 5766,*
    2018 WL 3104631 (S.D.N.Y. May 24, 2018) .................................................................... 7, 8

*Westinghouse Credit Corp. V. D'Urso,*
    371 F.3d 96 (2d Cir.2004) .........................................................................................................16

*World of Boxing v. King, No. 14-cv-3791*
    (SAS), 107 F. Supp. 3d 265, 2015 U.S. Dist. LEXIS 11964 (S.D.N.Y. February 2, 2015) ... 14

## STATUTES

28 U.S.C. § 1961 ...........................................................................................................1, 3, 4, 16

C.P.L.R. § 5001 .....................................................................................................1, 3, 13,14, 15

CPLR § 5004 .................................................................................................................... 13, 15

Fed. R. Civ. P. 12 ..................................................................................................................... 4

Fed. R. Civ. P. 54 .................................................................................................................. 1, 2

N.Y. Gen. Oblig. Law § 5-701 ............................................................................................... 4, 5

Plaintiff KeyBanc Capital Markets Inc. ("KeyBanc") respectfully submits this Memorandum of Law, together with the accompanying Declaration of Andrew P. Karamouzis, sworn to July 8, 2024 (the "Karamouzis Decl."), in Support of its Motion for Attorney's Fees, Costs and Expenses, and Pre- and Post-Judgment Interest pursuant to Fed. R. Civ. P. 54(d)(2)(a), this Court's Opinion and Order, dated June 27, 2024 (the "Opinion and Order") [ECF Dkt. No. 69], the Judgment, dated June 28, 2024 (the "Judgment") [ECF Dkt. No. 70], C.P.L.R. §§ 5001(a) and 5004(a), respectively, and 28 U.S.C. § 1961(a).

By this Motion, KeyBanc seeks an Order awarding: (i) all fees, costs and expenses incurred in prosecuting this action, including reasonable attorney's fees, pursuant to the express terms of the Engagement Agreement; (ii) pre-judgment and post-judgment interest on the Judgment; and (iii) all such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

KeyBanc was forced to commence this action and engage in protracted litigation for almost a year with Defendants Extreme Steel, Inc. ("Extreme Steel"), Extreme Crane and Rigging, Inc. ("Extreme Crane & Rigging") and Extreme Rental USA LLC ("Extreme Rental") (collectively, "Defendants" or the "Extreme Group"), to enforce its legal rights and obtain rightful payment of a $1.5 million Transaction Fee,[1] plus its out-of-pocket expenses, that was due and owing under the clear terms of the Engagement Agreement.

Beginning on or about August 14, 2023, immediately upon their receipt of KeyBanc's Invoice for the Transaction Fee, Defendants were intransigent and adopted a "no pay" approach, consistently maintaining that the Transaction Fee was not due and payable, asserting a variety of

---

[1]    All defined terms used herein shall have the same meaning ascribed to them by the Court in its Opinion and Order and in KeyBanc's s Motion for Summary Judgment.  [ECF Dkt. Nos. 36, 37 and 47]

contrived and disingenuous arguments including: (i) the Engagement Agreement was not an enforceable contract because there was "no meeting of the minds" between the parties, (ii) KeyBanc failed to perform its obligations under the Engagement Agreement, and (iii) no "Transaction" (as that term is defined in the Engagement Agreement) had occurred.  <u>See</u> Defendants' Memorandum of Law in Support of Motion for Summary Judgment, dated April 11, 2024, at 10 - 15 [ECF Dkt. No. 42];  Defendants' Memorandum of Law in Opposition to KeyBanc's Motion for Summary Judgment, dated May 1, 2024, at 8 – 10 [ECF Dkt. No. 57].

Defendants steadfastly asserted these same specious arguments throughout the course of this litigation, even after this Court squarely rejected Defendants' claim that the Engagement Agreement was not an enforceable contract and denied Defendants' motion to dismiss the Complaint.  <u>See</u> Opinion, dated January 5, 2024 (the "Opinion"), at 2, 15. [ECF Dkt. No.27]

Further, Defendants consistently refused to engage in any settlement discussions whatsoever despite numerous good faith efforts by KeyBanc and its counsel to resolve this matter and avoid protracted litigation.  <u>See</u> Karamouzis Decl., ¶¶  13 – 20, 24  and Exhibits A, B and C. Consequently, KeyBanc had no choice but to pursue this action and vigorously prosecute its claims to  conclusion at considerable cost and expense.

After almost a year of litigation, including substantial expedited fact and expert discovery and three dispositive motions, on June 27, 2024, this Court issued an Opinion and Order "grant[ing] summary judgment for plaintiff KeyBanc on its breach of contract claim and award[ing] the sum of $1,504,897.00, plus KeyBanc's costs and expenses, including reasonable attorney's fees, of prosecuting its claims against defendants in this action, to be paid by defendants jointly or severally. KeyBanc is hereby directed to file a motion proving the amount of such costs

and expenses, including reasonable attorney's fees." Opinion and Order, at 24.  Further, the Court

denied Defendants' cross-motion for summary judgment. *Id.*, at 25.

     The legal basis for the award of costs and expenses, including reasonable attorney's fees,

to KeyBanc is the attorney's fees provision set forth in the Engagement Agreement.  *See*

Engagement Agreement, at 3.   Specifically, the Engagement Agreement provides as follows:

> If the Transaction Fee is not paid in full within five business days following consummation of any Transaction then the Company agrees that it will be responsible for ***all fees and expenses*** incurred by KeyBanc (including reasonable fees and disbursements of KeyBanc's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce the Company's obligation to pay KeyBanc the Transaction Fee and/or to reimburse KeyBanc for expenses as provided by this letter agreement.

Engagement Agreement, at 3 (emphasis and italics added).

     Accordingly, by this motion, KeyBanc respectfully requests an award of all fees and

expenses, including reasonable attorney fees, in the total amount of $417,272.50 (Four Hundred

Seventeen Thousand Two Hundred Seventy-Two Dollars Fifty Cents) broken down as follows: (i)

$363,278.50 (Three Hundred Sixty-Three Thousand Two Hundred Seventy-Eight Dollars Fifty

Cents) in legal fees from August 29, 2023 through May 31, 2024; and (ii) $53,994.00 (Fifty-Three

Thousand Nine Hundred Ninety-Four Dollars) in costs and expenses from September 27, 2023

through June 30, 2024.

     Further, by this Motion, KeyBanc also respectfully requests an award of: (i) pre-judgment

interest in the amount of $118,371.33 (One Hundred Eighteen Thousand Three Hundred Seventy-

One Dollars Thirty-Three Cents) for the period of September 15, 2023 through June 28, 2024 (the

date of Judgment), pursuant to C.P.L.R. § 5001(a), and (ii) post-judgment interest for the period

of June 29, 2024 through the date of payment, pursuant to 28 U.S.C. § 1961(a).

3

## FACTUAL AND PROCEDURAL HISTORY

On August 14, 2023, KeyBanc sent an Invoice to Defendants in the total amount of $1,504,897.00 (One Million Five Hundred Four Thousand Eight Hundred Ninety-Seven Dollars), comprised of a $1.5 million Transaction Fee and $4,897.00 in out-of-pocket expenses, in accordance with the terms of the Engagement Agreement.  *See* Opinion and Order, at 7.

Defendants refused to pay the Invoice.   *Id.*   Accordingly, KeyBanc engaged M•K to represent it and pursue its legal remedies against Defendants.  As set forth in detail in the accompanying Karamouzis Decl., prior to commencing this action and in a good faith effort to reach an amicable resolution and avoid litigation, KeyBanc made several efforts to pursue early resolution of this dispute with Defendants.  *See* Karamouzis Decl., ¶¶ 13 – 20 and Exhibits A, B and C.

KeyBanc's efforts were ignored entirely by Defendants thereby forcing KeyBanc to vigorously prosecute its claims to obtain payment of the Transaction Fee and its out-of-pocket expenses.  *Id.*, ¶¶ 13, 16, 20 and 24.

On September 27, 2023, KeyBanc commenced this action by the filing of the Complaint. *See* Complaint, dated September 27, 2023.  [ECF Dkt. Nos. 1 , 1-1 and 1-2]

On November 17, 2023, Defendants filed a Motion to Dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that: (i) the Agreement was merely "an agreement to agree" and was therefore unenforceable, and (ii) the Agreement violated the New York Statute of Frauds (N.Y. Gen. Oblig. Law § 5-701) and was therefore unenforceable.  *See* Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint, dated November 17, 2023, at 1, 4 - 6.  [ECF Dkt. No. 23]

On December 8, 2023, KeyBanc filed a Memorandum of Law in Opposition to Defendants'

Motion to Dismiss the Complaint.  *See* KeyBank Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint, dated December 8, 2023.  [ECF Dkt. No. 25]

On December 15, 2023, Defendants filed a Reply Memorandum in Further Support of their Motion to Dismiss the Complaint.  *See* Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint, dated December 15, 2023.  [ECF Dkt. No. 26]

Oral argument on Defendants' Motion to Dismiss was originally scheduled for December 21, 2023 at 2:00 p.m.  However, on the morning of December 21, 2023, counsel for Defendants requested an adjournment, and the Court re-scheduled oral argument to January 3, 2024.

 On January 3, 2024, the Court held oral argument on Defendants' Motion to Dismiss.  At the conclusion of the hearing, the Court denied Defendants' Motion to Dismiss from the bench. *See* Minute Entry for proceedings held before Judge Jed S. Rakoff: Oral Argument held on 1/2/24.

On January 5, 2024, the Court issued a written Opinion denying Defendants' Motion to Dismiss in its entirety.  *See* Opinion, at 2, 15. [ECF Dkt. No. 27]

On January 17, 2024, Defendants filed their Answer to the Complaint.  *See* Answer, dated January 27, 2024. [ECF Dkt. No. 30]

As set forth in detail in the accompanying Karamouzis Decl., between December 8, 2023 and April 8, 2024, the parties engaged in extensive, expedited fact and expert discovery.  *See* Karamouzis Decl., ¶¶ 25 - 33. Discovery included the production of 16,443 documents by Defendants and 33,031 documents and 10,377 emails by KeyBanc, an exchange of expert reports and five depositions, all of which was completed in just over two months between January 30, 2024 and April 8, 2024.  *Id.*, ¶¶ 28 - 33.

On April 11, 2024, KeyBanc filed a Motion for Summary Judgment.  *See* KeyBanc's Motion for Summary Judgment, dated  April 11, 2023.  [ECF Dkt. Nos. 36, 37, 39, 47, 48, and 49]

On that same date, Defendants filed a Cross-Motion for Summary Judgment seeking the dismissal of all of KeyBanc's claims.  *See* Defendants' Motion for Summary Judgment, dated April 11, 2023.  [ECF Dkt. Nos. 40, 41, 42 and 44]

On May 13, 2024, both parties filed reply papers in support of their respective motions for summary judgment.  *See* KeyBanc's Reply Memorandum of Law, dated May 13, 2024 [ECF Dkt. No. 63]; Defendants' Reply Memorandum of Law, dated May 13, 2024 [ECF Dkt. No. 65].

On May 23, 2024, the Court held oral argument on KeyBanc's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment.  *See* Minute Entry for proceedings held before Judge Jed S. Rakoff: Oral Argument held on 5/23/24.

On June 27, 2024, the Court issued its Opinion and Order granting KeyBanc's Motion for Summary Judgment and denying Defendant's Cross-Motion for Summary Judgment.  *See* Opinion and Order, at 1 - 2 and 24 – 25.

On June 28, 2024, the Clerk of the Court issued a Judgment "award[ing] the sum of $1,504,897.00, plus KeyBanc's costs and expenses, including reasonable attorneys' fees, of prosecuting its claims against defendants in this action, to be paid by defendants jointly or severally."  Judgment, dated June 28, 2024. [ECF Dkt. No. 70]

## ARGUMENT

### KEYBANC IS ENTITLED TO AN AWARD OF COSTS AND EXPENSES,  INCLUDING REASONABLE ATTORNEYS' FEES, AND PRE- AND POST-JUDGMENT INTEREST

### Point I

### THE LEGAL STANDARDS GOVERNING AN AWARD OF ATTORNEY'S FEES

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language

is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Likewise, "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *2 (S.D.N.Y. May 24, 2018) (Rakoff, J.) (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)).

It is well settled that "[w]hen determining a fee award based upon a contractual attorneys' fees agreement between the parties, as in this lawsuit, courts have 'broad discretion' and need not follow a specific formula.'" *Clarendon Nat'l Ins. Co. v. Advance Underwriting Managers Agency, Inc.*, No. 06 Civ. 15361, 2011 U.S. Dist. LEXIS 142946, 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting *U.S. Fidelity & Guar. Co. v. Baspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)). "As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees." *Id. See also*, *Jefferies LLC v. Gegenheimer*, S.D.N.Y. , 2021 U.S. Dist. LEXIS 160911 (Aug. 25, 2021).

Here, it is undisputed, and this Court has recognized, that the Engagement Agreement contains a clear, unambiguous and enforceable attorney's fees provision which provides the legal basis for KeyBanc's motion.

> If the Transaction Fee is not paid in full within five business days following consummation of any Transaction then the Company agrees that it will be responsible for ***all fees and expenses*** incurred by KeyBanc (including reasonable fees and disbursements of KeyBanc's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce the Company's obligation to pay KeyBanc the Transaction Fee and/or to reimburse KeyBanc for expenses as provided by this letter agreement.

Engagement Agreement, at 3 (emphasis and italics added).

**Point II**

**KEYBANC'S ATTORNEYS' FEES ARE REASONABLE**

This Court succinctly set forth the standards for determining the reasonableness of attorneys' fees in *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *4 (S.D.N.Y. May 24, 2018) (Rakoff, J.).

> Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." In determining the reasonableness of attorney's fees, courts examine a variety of factors including "'the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged … for similar services; and the amount involved." It also appropriate for a court to consider the amount of fees requested in relation to the amount of damages at stake in the litigation. At the end of the day, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'"

*Id.* (citations omitted).

As set forth in detail in the accompanying Karamouzis Decl., M•K's attorneys' fees are fair and reasonable based upon the experience, skill and ability of counsel and the time and labor required to prosecute KeyBanc's claims. *See* Karamouzis Decl., ¶¶ 3 – 7 , 20 – 33 and 34 - 41.

First, the M•K attorneys handling this matter on behalf of KeyBanc are all experienced, skilled commercial litigators with stellar academic credentials who began their legal careers at large, national law firms representing national banks and various financial services companies and investment banks. *Id.*, ¶¶ 3 – 6, 39 - 41. Mr. Karamouzis is an experienced, skilled and highly regarded commercial litigator. *Id.*, ¶¶ 3, 4. He enjoys an AV® Peer Review Rating from Martindale Hubbell and has been named as a New York "Super Lawyer" every year from 2013 to 2024. *Id.*, ¶ 5. Ms. Moran, the founder of the Firm, has almost 40 years' experience as a

commercial litigator and also enjoys AV® Peer Review Rating from Martindale Hubbell.  *Id.*, ¶ 39.  Finally, Ms. Reichlin is an experienced and accomplished commercial litigator in her own right with almost 30 years of experience in financial services litigation.  *Id.*, ¶ 40.

Second, M•K's hourly rates are fair and reasonable rates and compare favorably with the prevailing hourly rates charged by commercial litigators with similar background, experience and skill in the New York metropolitan area.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (the hourly rate must be "in line with . . . prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation").  Specifically, M•K's hourly rates for attorneys in this matter ranged from $395 to $465 and its hourly rates for paralegal ranged from $205 to $215.  *Id.*, ¶¶ 45 – 48.  Federal courts in this jurisdiction routinely approve hourly rates in the range charged by M•K in similar matters.  *See Paguirigan v. Prompt Nursing Empl. Agency LLC, 1:17-cv-01302, 2022 U.S. Dist. LEXIS 186823, 2022 WL 6564755, at *7-*8 (E.D.N.Y. Apr. 7, 2022)* (approving rates of $550/hour for a lawyer with thirty years of experience and $450/hour for a counsel).  Courts in this district have "determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable." *Tessemae's LLC v. Atlantis Cap. LLC*, No. 18-CV-4902 (KHP), 2019 U.S. Dist. LEXIS 108020, **10 - 11 (S.D.N.Y. June 27, 2019)* (approving hourly rate of $475 per hour/collecting cases).  And generally, "payment of fees by sophisticated clients [is] solid evidence of their reasonableness in the market." *Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002).

Further, M•K's requested hourly rates are also justified by M•K's customary rates, the substantial skill and experience of its attorneys, and the nature and intensity of this litigation.  *See*

*Patel v. Bandikatla*, 2024 U.S. Dist. LEXIS 63548 ** 31 - 34 (S.D.N.Y. April 5, 2024) (Rakoff,

J.) (approving hourly rates of $450 per hour/collecting cases);

    Third, this matter required considerable time and effort because Defendants adopted and

maintained a resolute "no pay" approach to KeyBanc's breach of contract claim from inception.

*See* Karamouzis Decl., ¶¶ 12, 16, 20 - 22.  The precursor of  Defendants' intransigence was

Defendants' initial response to the Complaint – a Rule 12(b)(6) motion to dismiss on the grounds

that the 10-page, written, signed Engagement Agreement was unenforceable as it was merely an

"agreement to agree" and somehow, inexplicably, violated the Statute of Frauds.  *See* Defendants'

Memorandum of Law in Support of Motion to Dismiss the Complaint, at 1, 4 - 6. [ECF Dkt. No.

23]  Moreover, Defendants consistently rebuffed all of M•K's good faith efforts to settle this

matter.  *See* Karamouzis Decl., ¶¶  13 – 20, 24 and Exhibits A, B and C.  As a result, KeyBanc

was forced to prosecute its otherwise straightforward breach of contract claim through summary

judgment.

    Further, starting on September 25, 2023 and through the entire course of this litigation,

Defendants consistently argued that no "Transaction" (as that term is defined in the Engagement

Agreement) had occurred because the phrase "material portion" was somehow vague and

ambiguous. *See* Karamouzis Decl., ¶ 16 and Exhibit B, at 1 and 4  (Liff Letter, dated September

25, 2023) ("Second, even if the Transaction Fee provision is found to be enforceable, KBCM is

not entitled to a Transaction Fee because: (1) it failed to perform any services that would entitle

KBCM to a Transaction Fee and (2) the sales at issue were not a "material portion of the business,

assets, divisions or securities" of Extreme Group and therefore do not qualify as a "Transaction" under the Agreement.").

As a result, KeyBanc was forced to identify and retain an expert witness in investment banking to address the "material portion" argument advanced by Defendants. *See* Declaration of David B. Epstein in Support of KeyBanc's Motion for Summary Judgment, sworn to April 11, 2024. [ECF Dkt. No. 39]   In turn, Defendants retained an expert witness in opposition. *See* Declaration of Daniel W. Chaney in Opposition to KeyBanc's Motion for Summary Judgment, sworn to April 29, 2024. [ECF Dkt. No. 59]  Both experts issued detailed reports and were deposed at length. *Id.*  The expert witness discovery added considerable time and expense to the prosecution of this action.

Fourth, the amount at issue – the Transaction Fee of $1.5 million plus $4,897.00 in out-pocket expenses – warranted the amount of time and effort spent in prosecuting KeyBanc's breach of contract claim.

Finally, "[t]he most important factor in determining the reasonableness of a fee is the degree of success obtained." *Tulino v. City of New York*, 15-CV-7106, 2019 U.S. Dist. LEXIS 137523, *26 (S.D.N.Y. August 1, 2019) (Rakoff, J.) (quoting *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)).

Here, M•K obtained complete success as the Court granted KeyBanc's motion for summary judgment on its breach of contract claim and awarded KeyBanc the full amount of damages it sought - $1,504,897.00. *See* Opinion and Order, at 2 and  24 - 25. [ECF Dkt. No. 69] Further, the Court dismissed Defendants' cross-motion for summary judgment. *Id.*

Accordingly, based upon all of the foregoing factors, M•K's attorney's fees in this matter are fair and reasonable and this Court should award KeyBanc all of its attorneys' fees as requested.

**Point III**

**KEYBANC'S COSTS AND EXPENSES ARE REASONABLE**

KeyBanc seeks an award of costs and expenses in the total amount of $53,994.00 (Fifty-Three Thousand Nine Hundred Ninety-Four Dollars). _See_ Karamouzis Decl., ¶¶ 49 - 55 and Exhibits E - J.  The Engagement Agreement provides that Defendants shall be responsible for "***all fees and expenses*** incurred by KeyBanc (including reasonable fees and disbursements of KeyBanc's legal counsel) in connection with any action, suit or proceeding instituted in order to enforce the Company's obligation to pay KeyBanc the Transaction Fee".  _See_ Engagement Agreement, at 3 (emphasis and italics added).

All of the costs and expenses incurred by KeyBanc in this action are fair and reasonable. In fact, all of the costs and expenses incurred by KeyBanc are standard expenses in a commercial litigation matter that are awardable, namely, court filing fees, service of process fees, expert witness fees and deposition transcript fees.  _See Themis Capital v. Democratic Republic of Congo, No. 09-cv-1652, 2014 WL 4379100, at *9 (S.D.N.Y. Sept. 4, 2014)_ ("[C]ourts in this District routinely reimburse prevailing parties for the costs of expert witnesses and consultants, regardless whether the expert testified at trial."); _Sulkowska v. City of New York, 170 F. Supp. 2d 359, 370 (S.D.N.Y. 2001)_; _Duke v. Cnty. of Nassau, No. 97-CV-1495, 2003 U.S. Dist. LEXIS 26536, 2003 WL 23315463, at *6 (E.D.N.Y. Apr. 14, 2003)_; _Motorola, Inc. v. Abeckaser, No. 07-cv-3963, 2009 U.S. Dist. LEXIS 87803, 2009 WL 2568529, at *7 (E.D.N.Y. Aug. 5, 2009)_.

The two major expenses incurred by KeyBanc in this action were: (i)  the professional fees for David B. Epstein, KeyBanc's expert witness ($29,000.00), and (ii) the cost of the deposition transcripts provided by Veritext ($16,162.11) for Kevin Rodney, Jeffrey Shiring and Daniel Chaney.  _See_ Karamouzis Decl., ¶ 49, 51, 52 and Exhibits F and G .

KeyBanc respectfully submits that these two major expenses are fair and reasonable based upon the nature of the action. In particular, Defendants' contrived legal argument that the phrase "material portion" was somehow vague and ambiguous required KeyBanc to retain an expert witness to opine on the standard custom, practice and usage of that phrase in the investment banking industry in the context of an engagement agreement.

Finally, expedited deposition transcripts were necessary because of the expedited discovery schedule and the April 11 deadline for the filing of summary judgment motions.

Point IV

**KEYBANC IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST ON THE JUDGMENT**

**A.     Pre-Judgment Interest**

KeyBanc seeks statutory pre-judgment interest on the damages awarded - $1,504,897.00 (One Million Five Hundred Four Thousand Eight Hundred Ninety-Seven Dollars) -  at 9% (nine percent) per annum from September 15, 2023 through June 28, 2024, the date of Judgment, pursuant to CPLR § 5001(a) and CPLR § 5004(a), respectively. *See* Judgment, dated June 28, 2024. [ECF Dkt. No. 70]

Under New York law,[2] "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," NY CPLR § 5001(a) (McKinney's 2021)), "up until and including the date of judgment, at nine percent per annum," *Harleysville Worcester Ins. Co. v. Wesco Ins. Co., Inc.*, 314 F. Supp. 3d 534, 552 (S.D.N.Y. 2018), *aff'd sub nom. Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019) (citing NY CPLR §

---

[2]     The Engagement Agreement contains a choice of law provision which provides that the Engagement Agreement "shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law." *See* Engagement Agreement, Appendix A, Section 12.

5004).  *See* *also*, *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) ("Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract." (quotation omitted)); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1139 (2d Cir. 1994) ("Pursuant to New York Law, a party is entitled to 'prejudgment interest' on damages for breach of contract from the date of the breach until the entry of final judgment.").

"Under New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'"[3] *Midwood Junction v. Puerto del Sol Int'l Inv., S.A., No. 15-CV-5181 (RA) (SN), 2016 U.S. Dist. LEXIS 168654, 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016)* (quotation omitted), *adopted by* *2017 U.S. Dist. LEXIS 68936, 2017 WL 1857248 (May 4, 2017)*.  *See* *also*, *Arizona Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co., 586 F. App'x 713, 717 (2d Cir. 2014)* (Second Circuit has "repeatedly reiterated the mandatory nature of prejudgment interest under *§ 5001(a)* in non-equitable contract . . . cases."); *World of Boxing v. King*, No. 14-cv-3791 (SAS), 107 F. Supp. 3d 265, 2015 U.S. Dist. LEXIS 11964, at *16, 2015 WL 427225, at *5 n. 34 (S.D.N.Y. February 2, 2015) ("It is black letter New York law that parties that prevail on breach of contract claims are presumptively entitled to collect prejudgment interest in addition to contract damages."); *McCoy v. Goldberg*, 810 F. Supp. 539, 547 (S.D.N.Y. 1993) ("The intent of awarding prejudgment interest under CPLR § 5001 is to

---

[3]     New York law applies to the question of whether KeyBanc is entitled to prejudgment interest. "[U]nder New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (alteration in original) (quoting *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984)).  *See* *also*, *Palco Telecom Serv., Inc. v. Global Warranty Grp., LLC*, 14 Civ. 4818 (ADS) (SIL), 2015 U.S. Dist. LEXIS 158879, 2015 WL 10793120, at *3 (Aug. 17, 2015) ("It is well settled that state law applies to an award of prejudgment interest in a diversity action in federal court."); *Four H Fashions, Ltd. v. Russell Newman Brands, LLC*, No. 11 Civ. 4669 (LTS), 2011 U.S. Dist. LEXIS 141011, 2011 WL 6091548, at *2 n.1 (S.D.N.Y. Dec. 6, 2011) ("In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability.").

compensate an aggrieved party for damages due to the loss of the use of money or its equivalent, or a loss of the opportunity to realize a fair return on that money.").

"Prejudgment interest is computed as the 'per diem interest rate' (principal × [interest rate] / 365) multiplied by the number of days in the prejudgment interest period." *Bolivar v. FIT Int'l Grp. Corp., No. 12-CV-781 (PGG) (DF),* 2017 U.S. Dist. LEXIS 39887, 2017 WL 11473766, *at *23, n.16 (S.D.N.Y. Mar. 16, 2017)* (citations omitted), *adopted by 2019 U.S. Dist. LEXIS 161718, 2019 WL 4565067 (Sept. 20, 2019)*.

First, the statutory interest rate in New York is 9% (nine percent) per annum pursuant to *CPLR § 5004(a)*. *CPLR § 5004(a)* (McKinney's 2021). *See also, Asesoral Business Partners, LLC v. Seatech Worldwide Corp., No.* 19-CV-11512 (AJN) (SLC), 2021 U.S. Dist. LEXIS 241612, 2021 WL 6755016, at *6-7 (S.D.N.Y. Dec. 16, 2021)*, *adopted by 2022 U.S. Dist. LEXIS 77569, 2022 WL 1265945 (Apr. 28, 2022)*. Therefore, the per diem interest rate in this case is equal to $371.07 (($1,504,897.00 × .09) / 365).

Second, interest in New York is generally "computed from the earliest ascertainable date the cause of action existed." *CPLR § 5001(b)*. Here, KeyBanc sent its Invoice to Defendants on August 14, 2023. Defendants failed to pay the Invoice. On September 8, 2023, KeyBanc, by letter from counsel, demanded payment of the Invoice again by September 15, 2023. *See* Karamouzis Decl., ¶ 14, 15 and Exhibit A (M•K Letter, dated September 8, 2023). Again, Defendants failed to pay the Invoice. *Id.*, ¶ 16, 17 and Exhibit B. KeyBanc filed suit on September 27, 2023. Accordingly, KeyBanc respectfully submits that September 15, 2023 is "the earliest ascertainable date the cause of action [for breach of contract] existed" and that pre-judgment interest should run from that date forward.

Accordingly, based upon the per diem interest rate of $371.07, for the period of September

15, 2023 through June 28, 2024 (the date of Judgment), total pre-judgment interest amounts to $118,371.33 (One Hundred Eighteen Thousand Three Hundred Seventy-One Dollars Thirty-Three Cents) (319 days x $371.07).

**B.      Post-Judgment Interest**

KeyBanc also seeks and is entitled to statutory post-judgment interest from June 28, 2024, the date of judgment, until the Judgment is paid by Defendants.  Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Post-judgment interest on awards in civil cases "is mandatory under federal law." *Bleecker v. Zetian Sys., Inc.*, No, 12 Civ. 2151 (DLC), 2013 U.S. Dist. LEXIS 157103, 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013) (citing *Westinghouse Credit Corp. V. D'Urso*, 371 F.3d 96, 100 (2d Cir.2004)).

Accordingly, KeyBanc is entitled to post-judgment interest on all sums awarded, commencing when the Clerk of the Court entered the Judgment (June 28, 2024) through and until the date of payment.

## CONCLUSION

Based upon the foregoing and the accompanying Karamouzis Declaration and the evidence submitted, Plaintiff KeyBanc respectfully requests that this Court enter an Order awarding: (i) all fees, costs and expenses incurred in prosecuting this action, including reasonable attorney's fees; (ii) pre-judgment and post-judgment interest on the Judgment, and (iii) all such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  July 8, 2024
        Rockville Centre, New York

**MORAN • KARAMOUZIS LLP**

By: _/s/ Andrew P. Karamouzis_
        Andrew P. Karamouzis (AK 9332)

265 Sunrise Highway, Suite 61
Rockville Centre, New York 11570
(516) 678-6660
akaramouzis@mka-law.com

Attorneys for Plaintiff
KeyBanc Capital Markets Inc.

17